UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                             Criminal Case No. 13-20894

D-3 Wilfred Griffith, et al.,                Honorable Sean F. Cox

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT GRIFFITH'S MOTION IN LIMINE TO EXCLUDE OTHER ACTS EVIDENCE (Doc. #100)**

In this action, Defendants Wilfred Griffith ("Griffith" or "Defendant"), along with Zia Hassan ("Hassan") and Nathan Miller,[1] are charged in a first superceding indictment with Health Care Fraud Conspiracy and Conspiracy to Pay and Receive Kickbacks. (First Superceding Indictment, Doc. #39). The Government alleges that Defendants conspired to defraud the Medicare system by, *inter alia*, submitting false and fraudulent claims to Medicare for payment, offering kickbacks and bribes to Medicare beneficiaries in exchange for Defendants' use of their Medicare beneficiary numbers, and soliciting and receiving kickbacks in exchange for patient referrals. Jury selection for trial in this matter is set to begin on January 22, 2015. (Doc. #98).

This matter is before the Court on Defendant Griffith's Motion *in Limine* to Exclude 404(b) Evidence (Doc. #100). The Government filed a response to Defendant Griffith's Motion (Doc. #107) and the Court heard oral argument on January 16, 2014. Because the Court finds that the

---

[1] This Court entered a Rule 11 Plea Agreement as to Nathan Miller on August 4, 2014. (Doc. #58). Nathan Miller has not yet been sentenced. On January 16, 2015, Defendant Hassan pleaded guilty to Count One of the First Superceding Indictment, and the Government agreed to dismiss Count Two of the First Superceding Indictment Against Hassan.

Government's proffered evidence constitutes *res gestae* evidence, the Court shall DENY Defendant Griffith's motion.

**BACKGROUND**

In this action, Defendant Griffith is charged in a first superceding indictment with Health Care Fraud Conspiracy and Conspiracy to Pay and Receive Kickbacks. (Superceding Indictment, Doc. #39). The Government alleges that Defendant Griffith was paid by Defendant Hassan to refer Medicare beneficiaries to Hassan's company, Cherish Home Health Services, LLC ("Cherish"), even though Griffith was not a licensed physician. (Doc. #39 at 10). The Government further alleges that Hassan paid Griffith to sign medical documentation ordering physical therapy and other unnecessary medical services that were purportedly provided and billed to Medicare by Cherish. (Doc. #39 at 10). The Government claims it has evidence that Hassan paid Griffith a $2,000 check for his patient referrals to Cherish. (Doc. #39 at 15).

The Government has filed a Supplemental Discovery Notice (Doc. #70) as to Defendant Griffith. In its Notice, the Government states that it intends to offer evidence that "the patient information that defendant Griffith sold to defendant Hassan was obtained by defendant Griffith in his capacity as an employee" of Dr. Dwight Smith ("Dr. Smith") at Phoenix Visiting Physicians ("Phoenix"), Smith Medical Center ("SMC") and Trinity Homecare Physicians ("Trinity"). (Supplemental Discovery Notice, Doc. #70).

The Government maintains that Griffith "impersonated Dr. Smith" by writing prescriptions and ordering medical services using pre-signed prescription pads. (Doc. #70 at 2). The Government further alleges that "Griffith, posing as Dr. Smith, referred Medicare patients to home health companies, including Cherish, for medically unnecessary home health services." (*Id.*). The

2

Government claims that "Phoenix, Trinity, and [SMC] also submitted false claims to Medicare for health care services provided to such patients that were medically unnecessary, were provided by unlicensed medical professionals, and/or were not provided." (*Id.*).

The Government also states that it has evidence that Defendant Griffith "participated in fraud schemes involving other home health agencies, including, but not limited to, Swift Home Health Care LLC ("Swift")." (Doc. #70 at 2). The Government claims that Griffith worked as a beneficiary recruiter at Swift, and also solicited and received kickbacks for beneficiary referrals to Swift. (*Id.* at 2-3).

The Government intends to prove that Griffith committed these acts through the testimony of Tausif Rahman ("Rahman"), documentary evidence, Medicare data, and defendant Griffith's confession. (Gvmt. Resp., Doc. #107, at 10). According to the Government, Rahman was co-owner of Phoenix with Dr. Smith; Rahman also helped Dr. Smith set up SMC. (Rahman Stmt., attached to Gvmt. Resp. at Ex. A). Rahman also had an ownership interest in Physician's Choice Home Health Care LLC ("Physician's Choice"), First Care Home Health Care LLC ("First Care"), and Quantum Home Care, LLC ("Quantum").

Apparently, at some point Rahman and Griffith "had a falling out." (Gvmt. Resp. at 107). The Government claims that Griffith retained patient information from Phoenix and SMC, and later sold this information to Cherish. (Gvmt. Resp. at 5). However, instead of signing Dr. Smith's name to the referrals, Griffith used the names of other physicians, including Dr. Ruben Benito and Dr. Johnkay Nwadlnobl. (Gvmt. Resp. at 5-6).

Defendant Griffith has a filed a motion *in limine* to exclude all of this evidence from being admitted, pursuant to Federal Rules of Evidence 404(b) and 403. (Doc. #100). The Government has

3

filed a response. (Doc. #107).

At oral argument, the Government made an offer of proof setting forth Rahman's expected testimony:

> . . . [W]hat we expect Mr. Rahman to testify to is that he set up [Quantum, First Care, and Physician's Choice]. He had ownership interest in them. In order to keep the funnel of referrals coming from the doctors he helped – he made an arrangement with Dr. Dwight Smith to set up Phoenix Visiting Physicians and then subsequently Smith Medical Center which was an outpatient clinic.
>
> He then expected that the patients that were going through Phoenix and Smith Medical would be referred for home healthcare to his three companies . . . Mr. Rahman will not say that Mr. Griffith referred patients to [Quantum, First Care and Physician's Choice] in exchange for kickbacks . . . Mr. Rahman is going to testify that he committed fraud with these companies, that he's going to say that – and I assume Ms. Young is going to want to cross-examine thoroughly on what his prior conduct was, but with respect to Mr. Griffith, he's going to testify that he found out by checking why the patients that he knew Mr. Griffith was seeing as if he were Dr. Dwight Smith were not getting referred to these three companies, to the companies he owned. He then confronted Mr. Griffith about why the referrals were going outside of his company and then rather to Cherish. That Mr. Griffith initially did not admit that he was referring the patients to Cherish, but on subsequent confrontation admitted that yes, indeed he had been referring the patients he was seeing through Phoenix to Cherish under Doctor Smith's name in exchange for kickbacks.
>
> Then Mr. Rahman will further testify that there was a meeting between Mr. Griffith, Dr. Smith and Mr. Rahman at which this was discussed at which Mr. Rahman as the financier of Phoenix offered to pay Mr. Griffith kickbacks if he did refer the patients two the three home healthcare companies; First Choice, Quantum and Physician's Choice instead of referring them to Cherish. That after that the patients continued to go to Cherish.
>
> There was a further confrontation and then after that Mr. Rahman was contacted by Hassan, because there was a parting of the ways between Doctor Smith and Mr. Griffith. Doctor Smith was displeased that his name was being used in a pre-signed prescription pads and home healthcare documents that were kept at Phoenix for the purpose of referring to Mr. Rahman's companies. There's a parting of the ways. Mr. Griffith continued to refer the patients through different doctors. Doctor Bonito, and then later [Dr. John Nwadlnobl], and then Mr. Hassan contacted Rahman, knowing that Rahman was the real proprietor of Phoenix in order to arrange an agreement for patients to continue to come from Doctor Smith.

> That's sort of the overview of how the three home healthcare companies, as well as Phoenix and subsequently Smith Medical are part of the *res gestae* of the two counts that have been alleged in the indictment with respect to Mr. Griffith.

(1/16/15 Hearing, Rough Trans.)

**B)    Analysis**

Federal Rule of Civil Procedure 404(b) prohibits the admission of "evidence of a crime, wrong, or other act" at trial when that evidence is used to "show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is admissible for other purposes, however, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). "On request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." Fed. R. Evid. 404(b)(2).

Defendant Griffith objects to the admission of the evidence identified in the Government's Supplemental Discovery Notice on two grounds. Griffith argues that the proffered evidence should be excluded because the Government did not give proper notice, and because it constitutes character and propensity evidence in violation of Federal Rule of Evidence 404(b).

**1.    Notice**

First, Defendant Griffith argues that the Notice is deficient because it does not identify to whom Griffith made illegal patient referrals, for whom Griffith worked as a recruiter, or from whom Griffith received illegal kickbacks. (Doc. #100 at 2-3).

The Government first states that it does not intend to offer evidence of Griffith's conduct

involving either Swift or Trinity in its case in chief. The Government further responds that Defendant Griffith had proper notice of the other acts evidence that it intends to offer at trial. The Government states that, in addition to the Supplemental Discovery Notice (Doc. #70), its Trial Brief (Doc. #81) provides a summary of the expected testimony of Tausif Rahman as well as a summary of evidence relating to Phoenix and SMC. (Gvmt. Resp. at 13).

The Court finds that Griffith had "reasonable notice of the general nature" of the evidence the Government intends to offer at trial. The Government produced Rahman's interview statement to Griffith's counsel in November 2014. Rahman's statement contains information about the identity of all of his health care companies, Griffith's alleged role in the fraudulent scheme, as well as information about Rahman's interactions with Griffith, Hassan, and Smith. Contrary to Defendant's assertion, Rule 404(b)'s "reasonable notice" requirement does not require the Government to provide "specific evidentiary detail" such as "dates, times, places and persons involved in such acts; the statements of each participant; [or] any documents that contain evidence of such other crimes or acts . . . ." *U.S. v. Stoecker*, 920 F. Supp. 876, 883 (N.D. Ill. 1996). Thus, the Court finds the Government's notice to Defendant Griffith is reasonable and sufficient.

        **2.    Should The Court Exclude The Proffered Evidence Pursuant To Federal Rule of Evidence 404(b)?**

Next, Griffith challenges admission of Rahman's testimony regarding health care companies other than Phoenix and SMC because he argues that the evidence is being offered to prove his character and propensity to commit the charged offenses. (Doc. #100 at 3).

The Government responds that the proffered evidence is not "other acts" evidence at all—rather, it is "evidence of what defendant Griffith did to commit the crimes charged in the

indictment. These are the acts charged." (Gvmt. Resp. at 3). The Government maintains that its proffered evidence is part of the "*res gestae*" because it is necessary to complete the story of the charged offenses. (Gvmt. Resp. at 7). The Government explains that this evidence does not just complete the story, "it *is* the story." (Gvmt. Resp. at 8).

The Sixth Circuit has recognized that *res gestae* evidence is admissible as an exception to Federal Rule of Evidence 404(b). *U.S. v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). *Res gestae* evidence "consists of those acts or items which are 'inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense.'" *United States v. Olender*, 338 F.3d 629, 637 (6th Cir. 2003), quoting *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000). Typically, *res gestae* evidence "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Hardy,* 228 F.3d at 748. "Proper background evidence has a causal, temporal, or spatial connection with the charged offense." *Id.*

The Court finds, based on the Government's offer of proof, that the Government's proffered testimony of Rahman constitutes *res gestae* evidence and should not be excluded. Rahman's testimony appears to be temporally and causally related to Griffith's participation in the charged fraudulent scheme. Further, Rahman's testimony appears to explain, among other things, how Griffith obtained patients to refer to Hassan. The Court finds that Rahman's testimony on these topics is necessary to "complete the story" of the charged offenses. *U.S. v. Olender*, 338 F.ed 629, 637 (2003) (citation omitted).

Additionally, as the Government points out, "Defendant Griffith's work at Phoenix with Mr.

Rahman and Dr. Smith is conduct forming part of the charged offenses." According to the Government, Griffith obtained patient information through Phoenix and SMC, and used Doctors Smith, Benito, and Nwadlnobl to "refer" these patients to Hassan and Cherish. All of this evidence appears related to the manner and means by which Griffith obtained Medicare patient information to sell to Defendant Hassan. Therefore, the Court finds that Rahman's proffered testimony is also directly probative of the charged offenses.

Based on the parties' representations as well as the Government's offer of proof, the Court finds that the Government's proffered evidence constitutes *res gestae* evidence and is therefore admissible as an exception to Federal Rule of Evidence 404(b).

## CONCLUSION AND ORDER

Based on the foregoing, Defendant Griffith's Motion in Limine to Exclude 404(b) Evidence (Doc. #100) is DENIED.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 21, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 21, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager