UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                               Criminal Case No. 13-20894

D-3 Wilfred Griffith, et al.,             Honorable Sean F. Cox

    Defendants.
_____/

**OPINION AND ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE (Doc. #123) AND EXCLUDING DEFENDANT'S PROPOSED EXHIBIT FOUR**

Defendant Wilfred Griffith ("Defendant" or "Griffith") is charged in a first superceding indictment with one count of Health Care Fraud Conspiracy and one count of Conspiracy to Pay and Receive Kickbacks. (Superceding Indictment, Doc. #39). Jury trial in this matter began on January 22, 2015.

On January 30, 2015, Defendant provided the Government and this Court with a Second Amended Exhibit List. Defendant seeks to admit into evidence, as an exhibit, a copy of a provision of the Michigan Public Health Act ("the Act")[1], M.C.L. § 333.16125.

For the reasons set forth below, the Court shall GRANT the Government's motion *in limine* and prohibit Defendant from offering a copy of M.C.L. § 333.16215 into evidence.

**BACKGROUND**

Defendant seeks to enter into evidence a copy of a Michigan statute, M.C.L. § 333.16215, for the jury's consideration. This statute, entitled "Delegation of acts, tasks or functions of licensees," falls under Part 161 of the Act entitled "General Provisions." It reads, in pertinent part:

---

[1] M.C.L. § 333.1101, *et seq.*

> (1) Subject to subsections (2) to (6), a licensee who holds a license other than a health profession subfield license[2] may delegate to a licensed or unlicensed individual who is otherwise qualified by education, training, or experience the performance of selected acts, tasks, or functions where the acts, tasks, or functions fall within the scope of practice of the licensee's profession and will be performed under the licensee's supervision. A licensee shall not delegate an act, task, or function under this section if the act, task, or function, under standards of acceptable and prevailing practice, requires the level of education, skill, and judgment required of the licensee under this article.

M.C.L. § 333.16215.

At a conference held before the start of trial on January 30, 2015, the Government objected to Defendant's introduction of M.C.L. § 333.16215 into evidence. Pursuant to this Court's Order (Doc. #122), the Government noted its objections in a Motion *in Limine* filed on January 31, 2015. The Government objects to the admission of this statute as an exhibit on multiple grounds. First, the Government argues that it will confuse and mislead the jury as to the administration of Medicare. Next, the Government claims that introducing the statute into evidence will usurp the role of this Court to decide issues of law. Finally, the Government argues that the statute is irrelevant to the issue of whether Defendant made a material misrepresentation to Medicare. (Doc. #123 at 1).

Defendant states that, under the supervision of Dr. Smith, he made home visits, saw patients in a clinic setting, and prescribed medications to patients. Defendant maintains that he was allowed to perform these functions pursuant to M.C.L. § 333.16215, despite being unlicensed. (*See* Defs. Br., Doc. #124, at 5: "The Defendant should be allowed to present evidence to the jury in the form

---

[2] Health profession subfield license is defined as "an area of practice established under this article which is within the scope of the activities, functions, and duties of a licensed health profession, and requires less comprehensive knowledge and skill than is required to practice the full scope of the health profession." M.C.L. § 333.16105(5). For example, practice as a physician's assistant is a health profession subfield in the practice of medicine. M.C.L. § 333.17008.

of a copy of the Michigan statute, MCL 333.16215, which is the best evidence of the law in Michigan, that the services provided were not unlawful."). Defendant argues that this statute is relevant to rebut the Government's claim that Defendant was engaged in the unlawful practice of medicine.

## ANALYSIS

**1.     The law is not evidence.  Admission of the statute into evidence would confuse the jury.**

First, the Court finds that the admission of a statute into evidence will usurp the Court's duty to determine the law applicable to the case and instruct the jury accordingly.  In a trial setting, the jurors are the fact-finders.  The parties present evidence to the jury.  The judge determines the law applicable to the factual issues in the case.  The judge instructs the jury as to the legal conclusions (i.e. guilty or not guilty) required by their findings of fact.  These are basic principles of trial procedure.  To admit a statute into evidence as an exhibit in this case would thrust the jury into a quasi-judicial role and confuse them as to their fact-finding function.

**2.     The Court finds that the Michigan statute is irrelevant because, under Michigan law, a practicing physician's assistant must be licensed.**

Defendant argues that his actions were not unlawful because he was allowed to make home visits, see patients, and prescribe medications to patients under the supervision of Dr. Smith, a licensed physician, in accordance with Michigan law. (Def. Br., Doc. #124, at 4-5).  Defendant intends to submit evidence a copy of his purported medical degree and a physician's assistant certification.  It is undisputed that Defendant has not been licensed as a physician's assistant in the state of Michigan since approximately 1993.

Initially, the Court finds that Defendant's compliance (or non-compliance) with Michigan

3

law has very limited relevance in this case. Defendant is not charged with the unlawful practice of medicine. Rather, Defendant is charged with health care fraud, which requires the Government to prove that 1) Defendant knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program . . . 2) the scheme related to a material fact, 3) the defendant had the intent to defraud. Sixth Circuit Pattern Jury Instructions 10.05. The Government's theory of the case is that Defendant made several material misrepresentations to Medicare, including 1) that the patients were under the care of a licensed physician, 2) that a licensed physician determined that certain patients were eligible for home health care services, 3) that licensed physicians ordered home health care services, and 4) that licensed physicians approved the plan of care proposed by Cherish's employees. (Gvmt. Mo., Doc. #123, at 10). Even if Michigan law permitted Defendant to perform certain delegated tasks in regards to home health care patients, Defendant has not persuaded the Court that Michigan law would make it more or less probable that he made any of the material misrepresentations alleged by the Government.

Nevertheless, the Medicare Part A statutes and regulations do appear to permit a physician's assistant to make the initial face-to-face contact with the patient prior to certifying the patient's need for home health care:

> payment for services furnished to an individual may be made only to providers of services which are eligible therefor under section 1395cc of this title and only if—in the case of home health services, such services are or were required because the individual is or was confined to this home . . . and needs or needed skilled nursing care on an intermittent basis or physical or speech therapy or . . . continues or continued to need occupational therapy; such services are or were furnished while the individual was under the care of a physician, and, in the case of a certification made by a physician after January 1, 2010, prior to making such certification the physician must document that the physician himself or herself . . . or a **physician assistant (as defined in section 1395xx(aa)(5) of this title) under the supervision of a physician**, has had a face-to-face encounter . . . with the individual within a

4

reasonable time frame as determined by the Secretary . . . .

42 U.S.C. § 1395f(a)(2)(C) (emphasis added). In turn, a physician's assistant is defined as a

a physician assistant or nurse practitioner who performs such services as such individual is legally authorized to perform (in the State in which the individual performs such services) **in accordance with State law** (or the State regulatory mechanism provided by State law), and who meets such training, education, and experience requirements (or any combination thereof) as the Secretary may prescribe in regulations.

42 U.S.C. § 1395x(aa)(5)(A) (emphasis added). With regard to the provision of home health care services, Medicare defines the scope of a physician's assistant's permissible functions by reference to state law. Thus, to the extent that Defendant's conduct can be construed as merely satisfying the "face-to-face encounter" requirement described in section 1395f, the Michigan law governing the use of physician's assistants may have some relevance.

However, the Court finds that Defendant was not legally authorized to perform the alleged functions under Michigan law because he was not and is not a *licensed* physician's assistant. Generally, Michigan law requires physician's assistants to obtain licensure before engaging in the practice of medicine. M.C.L. § 333.17011 ("An individual shall not engage in the practice of medicine or practice as a physician's assistant unless licensed or otherwise authorized by this article.").

The Act does provide that a licensed physician can delegate certain tasks to "unlicensed individuals" under certain circumstances. M.C.L. § 333.16215(1). At first, it would appear that section 16215 might allow a licensed doctor to delegate tasks to an unlicensed physician's assistant, as Defendant claims was the case here. However, several rules of statutory construction persuade this Court to the opposite conclusion. First, "[s]tatutes must be read as a whole and construed to give

5

each word operative effect." *United States v. Branson*, 21 F.3d 113, 116 (6th Cir. 1994); see also *People v. Glass*, 288 Mich. App. 399, 404 (2010). By definition, physician's assistants already work under the supervision of other licensed physicians. Therefore, if licensed physicians could simply "delegate" a broad array of functions to unlicensed physician's assistants pursuant to M.C.L. § 333.16215, no physician's assistant would ever go through the difficulty of obtaining a license. This would effectively nullify M.C.L. § 333.17011's requirement that physician's assistants first obtain a license in order to practice. *See, e.g., People v. Ham-Ying*, 142 Mich. App. 831, 875-76 (1985) (holding that licensed physician could not delegate tasks under 333.16215 to a physician whose license was suspended because it would "frustrate the purpose behind the code's enactment of protecting the public from incompetence, deception, and fraud" and would allow the suspended physician to "circumvent the terms of and reasons for his suspension.").

Next, specific statutes control over general statutes. *Am. Bank, FSB v. Cornerstone Cmty. Bank*, 733 F.3d 609, 614 (6th Cir. 2013), quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general."); see also *Gebhardt v. O'Rourke*, 444 Mich. 535, 542, 510 N.W.2d 900, 903 (1994). Section 16215 of the Act appears in a part entitled "General Provisions," whereas section 17011 appears in a part entitled "Medicine." Section 16215 applies to all licensees under the Act, while Section 17011 is applicable only to medical practitioners, and, even more specifically, to physician's assistants. The Court finds that section 17011 is a more specific statutory provision than section 16215. To the extent that sections 16215 and 17011 appear to conflict,[3] section 17011

---

[3] Section 17011 states that physician's assistants must be licensed "unless otherwise authorized by this article." The Act provides several specific examples when an individual may practice a health profession without a license, including when the individual is a student in a

controls.

At this stage of the trial, Defendant has not established a foundation for Proposed Exhibit Four, nor that it is relevant. Because Defendant has been unlicensed since 1993, the Court finds that it appears that Defendant was acting as a physician's assistant in violation of Michigan law. Therefore, Michigan law is no defense in this case, and is therefore irrelevant. Irrelevant evidence is inadmissible. FED. R. EVID. 402. Accordingly, the Court shall GRANT the Government's Motion *in Limine* (Doc. #123) and preclude Defendant from offering M.C.L. § 333.16215 into evidence as an exhibit during the presentation of evidence so far in this case.

## CONCLUSION AND ORDER

Based on the foregoing, the Court shall GRANT the Government's Motion in Limine (Doc. #123) and preclude Defendant from offering into evidence a copy of M.C.L. § 333.16215.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

---

health profession training program, when an individual is discharging health profession duties while in the military service of the United States, and when an individual who meets the requirements for licensure is "rendering medical care in a time of disaster or to an ill or injured individual at the scene of an emergency." M.C.L. § 333.16171. Thus, section 17011's reference to authorization provided by other sections does not necessarily point back to section 16215 which, as described above, would create an anomalous loophole in the licensure requirement.