UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                           Criminal Case No. 13-20894

D-3 Wilfred Griffith, et al.,             Honorable Sean F. Cox

    Defendants.
_____/

**OPINION AND ORDER REGARDING ADMISSIBILITY OF COCONSPIRATOR STATEMENTS PURSUANT TO FED. R. EVID. 801(d)(2)(E)**

In this action, Defendant Wilfred Griffith ("Defendant" or "Griffith") is charged in a first superceding indictment with one count of Health Care Fraud Conspiracy and one count of Conspiracy to Pay and Receive Kickbacks. (Superceding Indictment, Doc. #39).

During trial, the Government sought to offer the statements of co-Defendant Zia Hassan, an alleged co-conspirator of Defendant Griffith, into evidence. The Court conditionally admitted the statements of Zia Hassan through witness Tausif Rahman.

For the reasons set forth below, pursuant to *U.S. v. Enright*, 579 F.2d 980 (6th Cir. 1978), the Court finds by a preponderance of the evidence that the Government has established the foundation required for admission of the coconspirator statements.

**APPLICABLE LAW**

The Federal Rules of Evidence define hearsay as an out of court statement offered for the truth of the matter asserted. FED. R. EVID. 801(c). Generally, hearsay is not admissible as evidence. FED. R. EVID. 802.

However, the Federal Rules of Evidence also provide that certain categories of statements

are excluded from the definition of hearsay. *See* FED. R. EVID. 801(d)(2). Specifically, a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" does not constitute hearsay. FED. R. EVID. 801(d)(2)(E).

"For an out-of-court statement to be admissible under Fed. R. Evid. 801(d)(2)(E), the offering party must establish by a preponderance of the evidence that a conspiracy existed, that the defendant was a member of the conspiracy, and that the coconspirator's statement was made during the course and in furtherance of the conspiracy." *U.S. v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011). The district court must make these findings prior to the end of trial. *Id.*, citing *Enright*, 579 F.2d at 986-87. The Court may conditionally admit the hearsay statements subject to a later finding of admissibility. *U.S. v. Castro*, 908 F.2d 85, 91 (6th Cir. 1990).

In evaluating whether the existence of a conspiracy has been established, the Court can take into consideration the content of the proffered statements. *U.S. v. Clark*, 18 F.3d 1337, 1341 (6th Cir. 1994). However, there must be some other independent evidence of the conspiracy in order for the statements to be properly admitted. *Id.* at 1341-42.

## GOVERNMENT'S EVIDENCE AT TRIAL

1) **Testimony of Tausif Rahman**

Tausif Rahman, former owner of Phoenix Visiting Physicians and other companies, testified that he confronted Defendant about the fact that Defendant was "siphoning" patients away from Rahman's home health companies and referring them to Cherish Home Health, which is owned and operated by Zia Hassan.

Rahman testified that, at some point, he had a conversation with Zia Hassan at a McDonald's restaurant. During that conversation, Hassan acknowledged that Griffith was referring patients to

Cherish. Hassan also tried to secure the continued flow of patients from Phoenix to Cherish, by allegedly proposing some sort of agreement to Rahman. These two statements of Hassan are the co-conspirator statements the Government seeks to offer as evidence against Defendant.

**2) Testimony of Special Agent Abhijit Dixit**

The Government also offered the evidence of Special Agent Abhijit Dixit ("Special Agent Dixit"). Special Agent Dixit testified that he was the lead case agent on the investigation of Tausif Rahman and his related companies, including Phoenix Visiting Physicians. Special Agent Dixit testified that he learned about Defendant's involvement in the conspiracies through his investigation of Rahman and Phoenix Visiting Physicians, as well as through a related investigation of Cherish Home Health.

Special Agent Dixit, accompanied by Special Agent Callahan, interviewed Defendant at his home in April 2014. During that conversation, Griffith told Special Agent Dixit that he has no license to practice medicine. Griffith told Special Agent Dixit that he would refer patients to Cherish Home Health, which is owned by Zia Hassan. Griffith told Special Agent Dixit that he signed Dr. Dwight Smith's name to patient referral forms without Dr. Dwight Smith's knowledge. In return, Griffith stated that Hassan gave him for $400 for every patient referral. Hassan paid Griffith by cash and/or check. Sometimes, the checks were made out to Griffith's wife, Pauline Griffith, instead of to Defendant directly. The Government has admitted into evidence at least one such check from Hassan to Griffith. (Gvmt. Ex. 44(E). Griffith started referring patients to Cherish using Dr. Ruben Benito's name in 2011 after Dr. Dwight Smith was arrested.

**3) Other Evidence**

The Government also offered the evidence of Harpreet Sandhu ("Harpreet") and Rajbir

Sandhu ("Rajbir").  Harpreet and Rajbir worked at Cherish during the relevant time period.  Both Harpreet and Rajbir testified to seeing Griffith come in to Cherish.  They also testified that, as part of their duties at Cherish, they kept track of recruiter referral information, including information regarding Griffith's patient referrals to Cherish.

Government witness Lebaron Hall was a patient at Cherish.  He testified that he was treated by Griffith, and that Griffith referred him to Cherish for home health care services.  Lebaron Hall testified that he approached Griffith about the fact that Cherish was overbilling Medicare for services allegedly provided to him, and Griffith replied by saying something to the effect of "Don't worry about it, Medicare will pay for it."

## ANALYSIS

**1)    The Government Has Established the Existence of a Conspiracy, and that Defendant is a Member of the Conspiracy.**

The crux of the health care fraud conspiracy is that Defendant and Zia Hassan were allegedly engaged in a conspiracy to defraud Medicare, whereby Griffith would provide Hassan with patients, as well as all of the necessary paperwork and referrals, so that Hassan could bill Medicare for services that otherwise would not be covered or paid for.  Hassan also allegedly paid Griffith for patient referrals.

The Court finds that the evidence presented at trial, including the testimony of Tausif Rahman, Special Agent Dixit, and Defendant's own statement, establishes that Defendant and Zia Hassan were involved in a conspiracy to commit health care fraud, as well as a conspiracy to give and receive kickbacks.  Griffith confessed to Special Agent Dixit that he had an agreement with Hassan to refer patients in exchange for cash.  Tausif Rahman testified that Hassan admitted that

Griffith was referring home health care patients to Cherish. Hassan also admitted that he was paying Griffith to send to Cherish. The Government has also admitted independent evidence of Cherish Home Health checks, drawn by Hassan, payable to Griffith and his wife. Griffith told Special Agent Dixit that Hassan made checks payable to Griffith's wife to hide the fraudulent nature of the payments. Based on this evidence, as well as the other evidence offered at trial, the Court finds by a preponderance of the evidence that the Government has established the existence of a conspiracy to commit health care fraud and a conspiracy to pay and receive kickbacks, and that Defendant is a member of both conspiracies.

**2) Hassan's Statements at Issue Were Made in Furtherance of the Conspiracy.**

The statements of Hassan that the Government seeks to admit into evidence concern 1) the fact that Griffith was referring patients to Cherish, and 2) the fact that Hassan tried to negotiate a deal with Rahman to keep the flow of patients coming to Cherish from Griffith. These statements were made by Hassan during a conversation in which Hassan not only acknowledged the existence and substance of his conspiracy with Griffith, but also tried to maintain the conspiracy with Griffith by attempting to bring Rahman into the conspiracy. The Court finds that Hassan's statements were made during and in furtherance of the alleged conspiracies.

## CONCLUSION AND ORDER

The Court finds that all of the foundational elements for admission of coconspirator statements have been established by a preponderance of the evidence, pursuant to the Sixth Circuit's instructions set forth in *U.S. v. Castro*, and *U.S. v. Enright*. Therefore, the Court finds that Hassan's statements are admissible as coconspirator statements pursuant to Federal Rule of Evidence

801(d)(2)(E).

    **IT IS SO ORDERED.**

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: February 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2015, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager