UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                  Criminal Case No. 13-20894

D-3 Wilfred Griffith, et al.,                Honorable Sean F. Cox

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT WILFRED GRIFFITH'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL (Doc. #138)**

On February 6, 2015, following a jury trial, Defendant Wilfred Griffith ("Defendant" or "Griffith") was convicted one count of Health Care Fraud Conspiracy and one count of Conspiracy to Pay and Receive Kickbacks. (Jury Verdict Form, Doc. #135).

This matter is before the Court on Defendant's renewed Motion for Judgment of Acquittal. (Doc. #138). The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* E.D.Mich. LR 7.1(f)(1). The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall DENY Defendant's motion.

**BACKGROUND**

In this action, Griffith was charged in a first superceding indictment with Health Care Fraud Conspiracy, in violation of 18 U.S.C. § 1349, and Conspiracy to Pay and Receive Kickbacks, in violation of 18 U.S.C. § 371. (Superceding Indictment, Doc. #39). The Government alleged that Griffith was paid by co-Defendant Zia Hassan ("Hassan") to refer Medicare beneficiaries to Hassan's company, Cherish Home Health Services, LLC ("Cherish"), for home health care services,

even though Griffith was not a licensed physician. (Doc. #39 at 10). The Government further alleged that Hassan paid Griffith to sign medical documentation ordering physical therapy and other unnecessary medical services, some of which were never actually rendered, that were purportedly billed to Medicare by Cherish. (Doc. #39 at 10). The Government claimed that Hassan paid Griffith in exchange for his patient referrals, as evidenced by a $2,000 check to Griffith from Hassan. (Doc. #39 at 15).

Jury trial as to Griffith commenced on January 27, 2015. At the close of the Government's proofs, Griffith's defense counsel made an oral motion for judgment of acquittal, which this Court denied in a written Order entered on February 5, 2015. (Order Denying Oral Motion for Acquittal, Doc. #128).

On February 6, 2015, the jury found Defendant Griffith guilty on both counts. On February 20, 2015, Defendant Griffith filed a renewed Motion for Judgment of Acquittal. (Def. Mo., Doc. #138). The Government filed its Response to Defendant's motion, by stipulation, on March 27, 2015. (Gvmt. Resp., Doc. #143).

## APPLICABLE LAW

Defendant seeks entry of a Judgment of Acquittal as to both counts, based on insufficiency of the evidence, prejudicial variance, and inability to present sufficient evidence to rebut the Government's claims. (Doc. #138).[1]

---

[1] As a threshold matter, the parties appear to dispute the proper standard to be applied to Defendant's claims. As mentioned, Defendant has only moved for a judgment of acquittal pursuant to Criminal Rule 29; Defendant does not request a new trial pursuant to Criminal Rule 33, either as an alternative remedy or otherwise.

The Government appears to assert that Defendant's claims of variance and/or preclusion of evidence, if meritorious, would not warrant a judgment of acquittal but must be remedied with a new trial. Thus, the Government argues that these two claims (prejudicial

2

In considering a motion for judgment of acquittal under Criminal Rule 29, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime beyond a reasonable doubt. *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994); *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 1979). In doing so, the Court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Id.*

The Sixth Circuit has explained that a defendant claiming insufficiency of the evidence "bears a very heavy burden." *Abner*, 35 F.3d at 253. On review, all evidence must be construed in a manner most favorable to the Government. Moreover, circumstantial evidence alone is sufficient to sustain a conviction. *Id.*

---

variance/constructive amendment, and exclusion of evidence) should be analyzed under the standard governing a Rule 33 Motion for a New Trial, not the standard applicable to Rule 29 Motions for Judgment of Acquittal.

The Government's assertion is incorrect. Entry of a judgment of acquittal is a proper remedy if the Court finds that a prejudicial variance or constructive amendment has occurred. *U.S. v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (explaining that a constructive amendment entitles a defendant to reversal of his conviction, whereas a variance only requires reversal if it "affected a substantial right of the defendant."); *Epstein v. U.S.*, 174 F.2d 754, 763 (6th Cir. 1949) (holding that "the trial court should have entered a judgment of acquittal on the ground of fatal variance . . ."); 2A Fed. Prac. & Proc. Crim. § 466 (4th ed.) ("There is only one ground for a motion for a judgment of acquittal. This is that 'the evidence is insufficient to sustain a conviction' of one or more of the offenses charged in the indictment or information. It has been held, however, that under this broad ground the defendant may claim a hopeless variance in the proof."); *U.S. v. Ford*, 872 F.2d 1231, 1234–37 (6th Cir. 1989) (finding that evidence admitted at trial amounted to constructive amendment of indictment, and reversing conviction as a result); *U.S. v. Eaton*, 501 F.2d 77, 80 (5th Cir. 1974) (citing *Epstein*, 174 F.2d 754) ("[I]f the district court determines on remand that the variance is material, it is obliged to render a verdict of acquittal on the ground that the evidence is insufficient to sustain the conviction."); *United States v. Camiel*, 689 F.2d 31, 40 (3d Cir. 1982) (finding that the only proper remedy for prejudicial variance is judgment of acquittal.). Thus, to the extent that Defendant's motion alleges that a prejudicial variance and/or constructive amendment occurred at trial, the motion is properly reviewed as a Motion for Judgment of Acquittal under Criminal Rule 29.

Defendant was convicted of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. "An individual commits health care fraud by 'knowingly and willfully execut[ing] or attempt]ing] to execute a scheme or artifice . . . to defraud any health care benefit program[] or . . . to obtain by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by . . . any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.'" *U.S. v. Patel*, 579 Fed. App'x 449, 460 (6th Cir. 2014) (quoting 18 U.S.C. § 1347(a)). Further, "[a]ny person who conspires to commit health care fraud may be convicted of a federal offense." *Id* (citing 18 U.S.C. § 1349).

To obtain a conviction for conspiracy to commit health care fraud under 18 U.S.C. § 1349, the Government must prove "an agreement between two or more persons to act together in committing an offense, and an overt act in furtherance of the conspiracy." *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000). The Government need not show a formal written agreement—rather, "it is sufficient to demonstrate a tacit or mutual understanding among the parties." *U.S. v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008), citing *United States v. Ables*, 167 F.3d 1021, 1031 (6th Cir. 1999). "Likewise, direct evidence of the conspiracy is not necessary. It is enough to present circumstantial evidence which a reasonable person could interpret as showing participation in a common plan . . . ." *Id*. (internal citations omitted).

To secure the conviction of a defendant for conspiracy to pay and receive healthcare kickbacks in violation of 18 U.S.C. § 371, the Government must prove that 1) two or more persons conspired, or agreed, to offer, pay, solicit, or receive health care kickbacks; 2) that the defendant knowingly and voluntarily joined the conspiracy; and 3) that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

18 U.S.C. § 371; *see also* 42 U.S.C. § 1320(a)-7b.

## ANALYSIS

**1)**     **Insufficiency of the Evidence**

Defendant argues that the Government presented insufficient evidence "from which a reasonable jury could be convinced beyond a reasonable doubt that the Defendant was guilty of the offenses charged." (Def. Mo., Doc. #138 at 2). Specifically, Defendant claims that the Government failed to prove that he "knowingly and voluntarily became a participant in the conspiracy between Cherish and Smith and Tausif Rahman . . . ." (Defs. Mo. at 8). Defendant also claims that there was "no evidence of any separate conspiracy between the Defendant and Cherish [Home Health Care] regarding any medicare beneficiaries," (*id.*), and that there was "no evidence of a conspiracy to commit health care fraud between the Defendant and Nathan Miller . . . ." (Def. Mo. at 9).

On February 4, 2015, at the close of the Government's proofs, Defendant made an oral Motion for Judgment of Acquittal, arguing that the Government had not offered evidence sufficient to support a conviction on either count charged in the First Superceding Indictment.

On February 5, 2015, this Court entered an Order Denying Defendant's Motion for Judgment of Acquittal. (Order, Doc. #128). In that Order, the Court summarized some of the evidence offered by the Government against Defendant at trial:

> Defendant was employed by Phoenix Visiting Physicians. Tausif Rahman ("Rahman"), former owner of Phoenix Visiting Physicians ("Phoenix") and other companies, testified that he confronted Defendant about the fact that Defendant was "siphoning" patients away from Rahman's home health companies and referring them to Cherish Home Health Care ("Cherish"), which is owned and operated by Zia Hassan ("Hassan"). Rahman testified that, at some point, he had a conversation with Hassan at a McDonald's restaurant. During that conversation, Hassan acknowledged that Defendant was referring patients to Cherish in exchange for money. Hassan also tried to secure the continued flow of patients from Phoenix to Cherish, by allegedly proposing some sort of agreement to Rahman.

> The Government also offered the evidence of Special Agent Abhijit Dixit ("Special Agent Dixit"). Special Agent Dixit testified that he was the lead case agent on the investigation of Rahman and his related companies, including Phoenix. Special Agent Dixit testified that he learned about Defendant's involvement in the alleged conspiracies through his investigation of Rahman and Phoenix, as well as through a related investigation of Cherish.
>
> Special Agent Dixit, accompanied by Special Agent Callahan, interviewed Defendant at his home in April 2014. During that conversation, Defendant told Special Agent Dixit that he has no license to practice medicine, but that he nevertheless referred patients to Cherish for home health care services. Defendant told Special Agent Dixit that he signed Dr. Dwight Smith's name to patient referral forms without Dr. Dwight Smith's knowledge. In return, Defendant stated that Hassan gave him for $400 for every patient referral. Hassan paid Defendant by cash and/or check. Sometimes, the checks were made out to Defendant's wife, Pauline Griffith, instead of to Defendant directly. The Government has admitted into evidence at least one alleged "kickback" check from Hassan to Defendant in the amount of $2,000.00. (Gvmt. Ex. 44(E)). Defendant further stated that he referred patients to Cherish using Dr. Ruben Benito's name in 2011 after Dr. Dwight Smith was arrested.
>
> Among the evidence offered by the Government includes the testimony of Harpreet Sandhu ("Harpreet") and Rajbir Sandhu ("Rajbir"). Harpreet and Rajbir worked at Cherish during the relevant time period. Both Harpreet and Rajbir testified to seeing Defendant come in to Cherish. Defendant was referred to as a "community liaison." They also testified that, as part of their duties at Cherish, they kept track of recruiter referral information, including information regarding Defendant's patient referrals to Cherish.
>
> Government witness Lebaron Hall ("Hall") was a Medicare beneficiary and a patient at Cherish. He testified that he was treated by Defendant, and that Defendant referred him to Cherish for home health care services. Hall testified that he approached Defendant about the fact that Cherish was overbilling Medicare for services allegedly provided to him, and Defendant replied by saying something to the effect of "Don't worry about it, Medicare will pay for it."
>
> Government witness Allison Knuckles ("Knuckles") testified that she is a Medicare beneficiary and was a patient at Cherish. Knuckles stated that she was referred to Cherish by Defendant for physical therapy services, although she never received any physical therapy.

(Feb. 5, 2015 Order, Doc. #128 at 3-4). This Court concluded that "this evidence, when viewed in the light most favorable to the Government, would permit a rational trier of fact to find Defendant guilty of all charges beyond a reasonable doubt." (*Id.* at 4-5). The Court denied Defendant's Oral Motion for Judgment of Acquittal. (*Id.*).

Defendant's renewed Motion for Judgment of Acquittal does not persuade this Court to a different conclusion. Therefore, for the reasons set forth in this Court's February 5, 2015 Order, (Doc. #128), this Court shall deny Defendant's Motion for Judgment of Acquittal to the extent that it asserts that there is insufficient evidence to support Defendant's convictions.

**2)      Prejudicial Variance/Constructive Amendment**

Defendant next argues that "the government's case against the Defendant was based primarily upon the Defendant not being licensed to see, assess, or treat patients," and that this amounted to "a prejudicial variance" of the indictment because "failing to not be licensed is not an element of the crimes charged." (Def. Mo. at 9). Defendant further asserts that "this variance amounted to a constructive amendment of the Indictment, which is reversible error." (Def. Mo. at 9). The Government responds that Defendant's motion should be denied because no variance or constructive amendment occurred in this case.

"A modification to an indictment may take one of two forms: an amendment or a variance." *U.S. v. Boyd*, 447 Fed. App'x 684, 688 (6th Cir. 2011). "A constructive amendment 'results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify the essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.'" *Kuehne*, 547 F.3d at 683 (quoting *U.S. v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). "An amendment is per se prejudicial, as it directly infringes the defendant's right to know of the charges against him by effectively allowing the jury to convict the defendant of a different crime than that for which he was charged." *Boyd*, 447 Fed. App'x at 688 (quoting *U.S. v. Beasley*, 583 F.3d 384, 389 (6th Cir. 2009)). The Court should "review the language of the indictment, the

7

evidence presented at trial, the jury instructions and the verdict forms utilized by the jury" to determine whether a constructive amendment has occurred. *Kuehne*, 547 F.3d at 683-84.

A variance differs from a constructive amendment in terms of "the burden placed upon the defendant and the remedy mandated . . ." *Id.* at 683. A variance occurs "when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Kuehne*, 547 F.3d at 683 (citation omitted). A variance is not per se prejudicial, and does not automatically require reversal. *Id.* "Rather, reversal is warranted only where a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right of the defendant." *Id.* (citing *U.S. v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000)). In other words, "[a] variance may cross the 'blurry' line into constructive amendment when the presentation of evidence and jury instructions modify essential elements of the offense charged." *Boyd*, 447 F. App'x at 688 (citation and quotation marks omitted). "[A] variance becomes a constructive amendment only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury." *Id.*

Defendant asserts that the Government's evidence against him centered around proving that Defendant engaged in the unlawful practice of medicine. Thus, Defendant argues, "a prejudicial variance occurred because failing to not be licensed [as a physician or physician's assistant] is not an element of the crimes charged." (Def. Mo. at 9).

The Government appears to agree that it offered evidence concerning the fact that Defendant is not a licensed physician, and responds that the facts proved at trial "were consistent with allegations in Count One of the First Superceding Indictment."

Upon review of the First Superceding Indictment, the Court's recollection of the evidence

8

at trial, and the Jury Instructions, this Court finds that no variance or constructive amendment occurred. Count One of the First Superceding Indictment charges Defendant with Health Care Fraud Conspiracy. (Doc. #39). In the indictment, the Government alleged that Medicare coverage for home health care services requires, among other things, that the beneficiary is under the care of a qualified physician who established a written Plan of Care for the beneficiary. (First Superceding Indictment, Doc. #39 at ¶ 10). Payment for home health care services under Medicare is authorized only if a physician certifies the beneficiary's need for those services. (*Id.* at ¶ 9). The Government alleged that "ZIA HASSAN would offer and provide kickbacks, bribes, and other inducements to WILFRED GRIFFITH for his referral of Medicare beneficiaries to Cherish [Home Health Services], when WILFRED GRIFFITH was not a licensed physician and was not licensed to treat patients or refer them for any medical services." (*Id.* at ¶ 26). Thus, one of the Government's theories of the case was that Griffith conspired with others to commit health care fraud by ordering home health care services for individuals, and then referring those individuals to Cherish, even though Griffith was not a licensed physician.

The jury instructions, which Defendant did not object to, included the following instructions:

### COUNT ONE: CONSPIRACY TO COMMIT HEALTH CARE FRAUD

(1)  Count 1 of the indictment accuses defendant Wilfred Griffith of conspiring to commit the crime of health care fraud in violation of federal law. It is a crime for two or more persons to conspire, or agree, to commit a criminal act, even if they never actually achieve their goal.

(2)  A conspiracy is a kind of criminal partnership. For you to find a defendant guilty of the conspiracy charge, the government must prove each and every one of the following elements beyond a reasonable doubt:

(A)  First, that two or more persons conspired, or agreed, to commit the

9

crime of health care fraud; and

(B) Second, that the defendant knowingly and voluntarily joined the conspiracy.

(3) You must be convinced that the government has proved all of these elements beyond a reasonable doubt in order to find the defendant guilty of the conspiracy charge.

*Source: Sixth Circuit Pattern Jury Instruction 3.01A; 18 U.S.C. § 1349.*

### COUNT ONE: EXPLANATION OF HEALTH CARE FRAUD

(1) Count One of the indictment accuses the defendant of conspiring to commit the crime of health care fraud. The crime of health care fraud includes the following elements:

(A) The defendant knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services;

(B) The scheme related to a material fact; and

(C) The defendant had the intent to defraud.

(2) Now I will give you more detailed instructions on some of these terms.

(A) A "health care benefit program" is any public plan, affecting interstate commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan. A health care program affects commerce if the health care program had any impact on the movement of any money, goods, services, or persons from one state to another. The government need only prove that the health care program itself either engaged in interstate commerce or that its activity affected interstate commerce to any degree.

(B) A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

(C) The term "false or fraudulent pretenses, representations, or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made

10

> with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.
>
> (D) An act is "knowingly and willfully" done if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason.
>
> (E) A misrepresentation or concealment is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of a person of ordinary prudence and comprehension.
>
> (G) To act with the "intent to defraud" means to act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself.
>
> (3) It is not necessary that the government prove (i) all of the details alleged concerning the precise nature and purpose of the scheme, (ii) that the alleged scheme actually succeeded in defrauding anyone, (iii) that someone relied on the misrepresentation or false statement, (iv) that the defendant benefitted personally from the scheme to defraud, or (v) that the Medicare program suffered a loss.
>
> *Source: Sixth Circuit Pattern Jury Instruction 10.02, 10.03 and 10.05(modified); 18 U.S.C. § 1347; Bryan v. United States, 524 U.S. 184 (1998)*

(Jury Instructions, Doc. #136 at 19–22).

The Court finds that the Government's evidence at trial and the jury instructions were consistent with the allegations in the First Superceding Indictment, including the Government's allegation that Defendant Griffith is not, and was not, a licensed physician. For example, the Government offered the testimony of Kelly Hartung, who testified as to Medicare claims rules and procedures. Kelly Hartung testified that Medicare would not provide reimbursement for home health care services unless a licensed physician certified that the Medicare beneficiary met the requirements for the provision of home health care services. (Hartung Trans., attached to Gvmt. Mo in Limine, Doc. #123 at Ex. 2 p. 20). Defendant himself appeared to admit during his cross-examination that he is not a licensed medical doctor in the State of Michigan. The Government also

offered evidence that Defendant referred Medicare beneficiaries for home health care services using other doctors' names. Thus, the Court finds that no prejudicial variance or constructive amendment occurred. Defendant's renewed Motion for Judgment of Acquittal is DENIED to the extent it alleges otherwise.

**3)     Precluded Evidence**

Defendant claims that he "was prejudiced when he was not allowed to present sufficient evidence to rebut the government's claims." (Def. Mo. at 10). First, Defendant "asserts that he legitimately saw and visited patients under the supervision of Dr. Smith, but was prohibited from presenting a complete defense to the government's claims." (Def. Mo. at 10). Defendant states that he was "not allowed to offer evidence in the form of a state statute that permits an unlicensed medical doctor to work under the supervision of a licensed medical doctor." (Def. Mo. at 10).

Just before trial, Defendant notified the Government and the Court of his intention to enter into evidence a copy of a Michigan statute, M.C.L. § 333.16215 for the jury's consideration. For the reasons set forth in this Court's Opinion and Order Granting the Government's Motion in Limine (Order, Doc. #126), the Court finds that exclusion of this statute from evidence was proper, and does not warrant a new trial or entry of a judgment of acquittal.

Defendant also states that he was prevented from presenting the testimony of his former attorney who had advised Defendant that he could work as an unlicensed medical doctor under the supervision of a licensed physician. (Def. Mo. at 10). Defendant requested an adjournment of trial because this witness was ill and could not testify. The Court denied Defendant's request for an adjournment on the record.

To the extent that Defendant argues that the Court's denial of his request for an adjournment

12

impacted his ability to present a defense, the Court finds this argument without merit. "In criminal proceedings, a trial court's denial of a continuance rises to the level of a . . . constitutional violation only when there is 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004) (citation omitted); *see also U.S. v. Parker*, 403 Fed. App'x 24, 26 (6th Cir. 2010). "A defendant must show that the denial of a continuance actually prejudiced his or her defense." *Burton*, 391 F.3d at 772.

As the Government points out, Defendant made no offer of proof establishing the expected content of the proposed witness's testimony. Indeed, the proposed witness is a judge and former attorney with whom Defendant had allegedly consulted in the early 1990s—nearly 20 years prior to the events giving rise to the instant case. It is far from clear what value, if any, the proposed witness's testimony would have added to Defendant's presentation of his defense. Thus, Defendant has failed to establish that he was actually prejudiced by the Court's denial of his request for adjournment.

Furthermore, Defendant has made no showing that he served a trial subpoena on the proposed witness. Nor did Defendant make any representation regarding the proposed witness's future availability. On this basis, Defendant has not shown that he exercised diligence in securing his desired witness's attendance at trial. *See, e.g., Coy v. Renico*, 414 F. Supp. 2d 744, 776 (E.D. Mich. 2006) (Rosen, J.) (finding that petitioner was not denied the right to present a defense by trial court's denial of his adjournment request, where the court found that petitioner failed to exercise due diligence in locating the witness and securing the witness's attendance at trial).

Therefore, the Court finds that Defendant is not entitled to relief, either in the form of a new trial or a judgment of acquittal, based on this Court's exclusion of evidence at trial.

## CONCLUSION AND ORDER

Based on the foregoing, Defendant's renewed Motion for Judgment of Acquittal (Doc. #138) is DENIED.

**IT IS SO ORDERED.**

                                          S/Sean F. Cox
                                          Sean F. Cox
                                          United States District Judge

Dated: May 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2015, by electronic and/or ordinary mail.

                                          S/Jennifer McCoy
                                          Case Manager