UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                          Criminal Case No. 13-20894

D-3 Wilfred Griffith, et al.,              Honorable Sean F. Cox

    Defendants.
_____/

**MEMORANDUM OPINION REGARDING DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT AND DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE (Doc. #165)**

On February 6, 2015, Defendant Wilfred Griffith ("Defendant" or "Griffith") was convicted by a jury of both counts of the First Superceding Indictment: Count One - Conspiracy to Commit Health Care Fraud, and Count Two - Conspiracy to Pay and Receive Kickbacks. (First Superceding Indictment, Doc. #39; Verdict Form as to Griffith, Doc. #135).

This Court held a Sentencing Hearing as to Defendant Griffith on July 17, 2015. During the Sentencing Hearing, the Court heard argument concerning the twenty-two (22) objections Defendant made to the Presentence Investigation Report ("PSR").

For the reasons stated on the record, which are re-stated herein, Defendant's objections to the PSR that were not resolved by the parties are overruled and Defendant's Motion for Downward Departure is DENIED.

**Objection #1**

Defendant objects to page 3 of the PSR because has never used the alias "Wilfred Griffin." This is merely a name that has been associated with Defendant, as discovered by the Probation Department through their search of government databases such as ATLAS. This information is

proper, and Defendant's objection is overruled.

**Objection #2**

Defendant objects to page 3 of the PSR because it lists an alias Social Security Number purportedly associated with Defendant: XXX-XX-6843. Defendant's actual SSN is XXX-XX-6483. Defendant states he has never used an alias SSN.

Again, this is merely an SSN that has been associated with Defendant, as discovered by the Probation Department through their search of government databases. This information is properly contained in the PSR, and Defendant's objection is overruled.

**Objection #3**

Defendant states that his doctorate degree of doctor of medicine from Grace University School of Medicine should be noted in the PSR. The parties resolved this objection prior to the Sentencing Hearing.

**Objection #4**

Defendant objects to paragraph 9 of the PSR because it "asserts inaccurate fact [sic] surrounding the charges, that are based upon initial arrest reports, and violate the Defendant's rights." Paragraph nine described the manner and means of the charged conspiracy.

At Defendant's trial, Special Agent Abhijit Dixit testified that Griffith told SA Dixit that he 1) referred patients to Cherish using the names of Dr. Smith and Dr. Benito; and 2) that Hassan paid him $400 for each referral. Government witness Allison Knuckles testified that, in exchange for narcotics prescriptions, she signed and certified treatment forms even though she received no physical therapy. Government witness Lebaron Hall testified that he told Defendant that Medicare was being billed for services he never received, but that Defendant told him not to worry, Medicare was paying for it.

The Court finds that the information contained in paragraph nine of the PSR is proper. It was contained in the First Superceding Indictment and was substantiated by the evidence submitted at trial. Defendant's objection #4 is overruled.

### Objection #5

Defendant objects to paragraph thirteen of the PSR because he claims that there is no evidence to substantiate that any referral paperwork sent to co-Defendant Hassan regarding home health care services had not been signed by a licensed physician. Defendant also appears to object to the discussion of "kickbacks."

The Court concludes that the information contained in paragraph 13 is proper. Defendant, who is not a licensed physician, admitted to signing referral paperwork to send Medicare beneficiaries to Cherish for home health care services. Regarding the discussion of "kickbacks" in paragraph thirteen, Griffith was convicted of Count Two - Conspiracy to Pay and Receive Kickbacks. The evidence at trial showed that co-Defendant Hassan paid Defendant to refer Medicare patients to Cherish Home Health Care. Defendant's objection #5 is overruled.

### Objection #6

Defendant argues that the statement contained in paragraph 14 of the PSR that he prescribed drugs, including narcotics, should be stricken because no filled or unfilled prescriptions were submitted into evidence.

The Court finds that the information contained in paragraph 14 is proper. Defendant admitted to SA Dixit that he wrote narcotics prescriptions. (Doc. #158 at 14). Allison Knuckles testified at trial that Defendant prescribed her Oxycontin and Lortab, which are narcotic pain relievers. Lebaron Hall also testified at trial that Defendant prescribed him narcotics. Defendant's

3

objection #6 is overruled.

**Objection #7**

Defendant objects to paragraph seventeen of the PSR—specifically, the statement that patients referred to Cherish did not actually receive home health care services. Defendant maintains that only one patient testified that he did not receive services. Defendant also claims there is no evidence that he faxed lists of Medicare beneficiaries to Cherish so that Cherish could bill Medicare for services.

The Court finds that the information in paragraph seventeen is corroborated by trial evidence. Lebaron Hall testified that he did not receive services that were billed to Medicare. Allison Knuckles testified that she never received any physical therapy from Cherish. Rajbir Sandhu, a former Cherish employee, testified that Griffith would fax in lists of prospective patients, that she would check their Medicare eligibility and fax the list back to Griffith, and then a referral would come in to start home healthcare services. Griffith was only paid a referral fee for Medicare patients. The evidence shows that Griffith faxed lists to Cherish so that Cherish could bill Medicare for home health care services. Defendant's objection #7 is overruled.

**Objection #8**

Defendant objects to the amount of loss attributed to him in paragraph eighteen of the PSR. Paragraph eighteen states that Defendant is responsible for $680,922.78 of loss. Defendant argues that "the jury heard no evidence substantiating this amount, and made no finding as to the amount of the loss." Defendant states that he objects to paragraph eighteen based on *Alleyne v. U.S.*, 133 S. Ct. 2151 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

First, *Alleyne* and *Apprendi* do not apply here because the amount of loss does not affect the statutory minimum or statutory maximum sentence. *Alleyne* is most cited for the proposition that

any fact that increases the mandatory minimum sentence for a crime is an element of the crime, not a sentencing factor, and that it must be submitted to a jury. *Apprendi* stands for the proposition that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt.

If the amount of loss is in dispute, then "either the government must prove the loss amount by a preponderance of the evidence, or the district court may conduct judicial factfinding to determine the loss amount." *U.S. v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011). The Court can make findings of fact concerning the amount of loss. Here, there is no genuine dispute as to the amount of loss because Defendant has not provided any evidence to put the amount of loss into dispute. "The government's burden [to prove the loss amount] is triggered when the defendant 'produces some evidence that calls the reliability or correctness of the alleged facts into question' that is more than a 'bare denial.'" *Poulsen*, 655 F.3d at 513. When a defendant has no evidence to contradict the PSR, the Court is entitled to rely on the facts set forth in the PSR. *Id.*

Even if there was a genuine dispute as to the amount of loss, the Court finds that the amount of loss is sufficiently substantiated by trial evidence. At trial, the Government offered evidence to establish that Defendant was solely responsible for referrals to Cherish under the names Dr. Smith and Dr. Benito. (Doc. #157 at PageID# 1309; Doc. #160 at PageID# 1488, 1491–93, 1500, 1502; Doc. #156 at PageID# 1119–24).

Special Agent Thomas Callaghan testified at trial that he calculated the amount of loss sustained by Medicare due to claims submitted by Cherish in which Drs. Smith and Benito were the referring physicians. SA Callaghan reviewed the claims submitted by Cherish to Medicare and created the summary charts admitted at trial. (Doc. #160 at 61, 64; Trial Ex. 155A and 155B).

5

SA Callaghan relied on the claims data contained on Exhibit 11, which is a CD-ROM. Samantha Shivak provided the data contained on Exhibit 11. Samantha Shivak is a senior statistician for a federal contractor that works with the Center for Medicare and Medicaid Services regarding fraud and abuse. (Doc. #157 at 54–59). Shivak was asked by the Government to compile the claims data for Cherish Home Health Services. (Doc. #157 at 57–58).

Government's Exhibit 155B shows that the total amount that Medicare paid to Cherish for patients referred under the names Dr. Dwight Smith and Dr. Ruben Benito is $680,922.78. Therefore, $680,922.78 is the proper amount of loss. Defendant's objection #8 is overruled.

**Objection #9**

Defendant objects to the restitution calculation in paragraph nineteen for the same reasons stated in Objection #8. Defendant asserts that there is no evidence that he made 197 referrals to Cherish, or that he caused Cherish to receive $680,922.78 from Medicare.

In light of this Court's ruling on objection #8, Defendant's objection #9 is moot. The proper amount of restitution equals the actual losses attributable to Defendant's conduct in this case, or $680,922.78.

**Objection #10**

Defendant argues, regarding paragraph 26 of the PSR, that a 14-level increase in the base offense level for an amount of loss greater than $400,000 but less than $1,000,000 is improper.

The Court finds that this objection is without merit, for the reasons set forth in response to Defendant's Objections #8 and #9. The proper amount of loss attributable to Defendant's conduct is $680,922.78, which increases the base offense level by 14 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H). Defendant's objection #10 is overruled.

**Objection #11**

Defendant argues that the "sophisticated means" enhancement under § 2B1.1(b)(9) is improper because no sophisticated means were used.

The Court disagrees. "Sophisticated means" as contemplated by U.S.S.G. § 2B1.1, includes especially complex or intricate offense conduct pertaining to execution or concealment of offense. As noted by the Probation Department, the Federal Sentencing Guidelines Handbook states that "[t]he possession of false document-making implements may constitute sophisticated means, as may the creation of numerous falsehoods, even if the documents were easily generated and contained only simple falsehoods."

Here, Defendant and his co-conspirators created numerous fabricated and fraudulent documents to legitimize the scheme and induce Medicare to pay, including patient revisit notes and referral forms. Defendant himself recruited beneficiaries and created fraudulent referral paperwork. Therefore, the Court finds that the sophisticated means enhancement is proper. Defendant's objection #11 is overruled.

**Objection #12**

Defendant argues that a 2-level enhancement under § 3B1.3 for abuse of position of trust/use of special skill not warranted.

The Court disagrees. U.S.S.G. § 3B1.3 Application Note 4 states that "special skill" refers to a skill not possessed by general public, usually requiring substantial education, training, or licensing, like a doctor or lawyer. Although he is unlicensed, Defendant is a medical doctor by training. Defendant held himself out to the public as a licensed physician to prescribe narcotics and home health care services to patients. The enhancement under § 3B1.3 is proper, and Defendant's objection #12 is overruled.

### Objection #13

Defendant argues that the total offense level should be 6, not 24, based on his previous objections.

In light of this Court's rulings on Defendant's previous objections, the Court finds that the proper total offense level is 24. Defendant's objection #13 is overruled.

### Objection #14

Defendant argues that the Desertion/Abandonment charge should not be included in the criminal history section of the PSR because the charge was dismissed.

The Court finds that this charge is properly listed as part of Defendant's criminal history. Defendant pleaded guilty to this charge in Third Circuit Court, Detroit, MI but was never sentenced, and the charge was eventually dropped. The Probation Department notes that all of Defendant's criminal history is included in the PSR, upon which the Court may base its findings regarding the seriousness of offender's past criminal conduct and/or the likelihood that Defendant will commit other crimes. Further, the Court assured Defendant at the Sentencing Hearing that this charge would not have any impact on the Court's sentence. Defendant's objection #14 is overruled.

### Objection #15

Defendant states that he was found not guilty of charges of gambling and larceny, but that the PSR erroneously states that he was found guilty of these charges.

At the sentencing hearing, the parties agreed that this objection was resolved and the PSR amended.

### Objection #16

Defendant objected in writing to paragraph 67 of the PSR, but withdrew the objection at the

Sentencing Hearing. Paragraph 67 of the PSR is accurate and contains information that Defendant provided to the Probation Department during his presentence interview.

### Objection #17

Defendant argues that, "[b]ased on a total offense level of 6 and a criminal history category of II, the guideline imprisonment range is 0-6 months."

This Court finds that, in light of its prior rulings on Defendant's objections, Defendant's total offense level is 24 and his criminal history category is II. This produces an advisory guideline range of 57–71 months. Defendant's objection #17 is overruled.

### Objection #18

Defendant objects to the statement in paragraph 80 that the Court may impose a term of supervised release of not more than three years on each count. Defendant states that he has been on bond throughout this case and has always been compliant. Therefore, Defendant argues that supervised release after a term of imprisonment is unwarranted here.

The Court notes Defendant's position on supervised release; however paragraph 80 is simply a restatement of 18 U.S.C. § 3583(b)(2) and is properly included in the PSR. Defendant's objection #18 is overruled.

### Objection #19

Defendant argues that his applicable guideline range is in Zone A, so probation is available. In light of this Court's prior rulings on Defendant's objections, the applicable guidelines range is 57–71 months, which is in Zone D. Thus, Defendant is ineligible for probation. Defendant's objection #19 is overruled.

### Objection #20

Defendant argues that the proper amount of restitution is zero, or, in the alternative,

$105,079.85. However, for the reasons set forth in response to Defendant's objection #8, Defendant's objection #20 is overruled. The proper amount of restitution is $680,922.78.

### Objection #21

Defendant objects to the statement contained in paragraph 89 that there is no information that would warrant a departure from sentencing guidelines. Defendant states that he has serious health problems that should be considered for downward variance and home confinement.

The Probation Department notes that factors that the Court can consider under § 3553(a), like Defendant's health, have been noted in Part F of the PSR. Moreover, the Court finds that these issues are more properly addressed (and in fact have been raised) by Defendant in a Motion for Downward Departure. (Def. Mo., Doc. #165). Objection #21 is overruled.

### Objection #22

Defendant objects to paragraph 93 of the PSR regarding Defendant's respect for the law. Defendant states that he "acted in reliance on an attorney's opinion regarding the law in Michigan" and believed he could work under the supervision of a licensed physician without himself being licensed. Defendant states that this information shows that Defendant respects the law and should be added to the PSR.

The Court notes that paragraph 93 simply contains the Probation Department's opinion regarding one of the sentencing factors contained in 18 U.S.C. § 3553(a), and is properly included in the PSR. Defendant's objection #22 is overruled.

### Defendant's Motion for Downward Departure

Defendant has filed a Motion for Downward Departure, in which he raises three issues that

require resolution.  (Doc. #165).

First, Defendant states that he should receive a 4-level reduction from his total offense level because he was a "minimal participant" in the conspiracy.  *See* U.S.S.G. § 3B1.2.  Defendant argues that the "numbers" support his minimal participation in the conspiracy because his patient referrals only account for approximately ten percent of the total allegedly fraudulent patient referrals to Cherish.

The Government responds that Defendant's role was significant because he was responsible for supplying patients to the Cherish organization, and that "this is arguably the most important function of the criminal conspiracy."  (Gvmt. Resp., Doc. #167 at 11).

Pursuant to U.S.S.G. § 3B1.2 Application Note 3, the "mitigating role" section "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."  Further, Application Note 4 explains that the "[minimal participant reduction] applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."

The Court finds that this Defendant does not qualify for the minimal participant reduction under U.S.S.G. § 3B1.2. Defendant is not among the least culpable of all of his co-conspirators. In fact, Defendant played a large role in funneling Medicare beneficiaries to Cherish, for kickbacks, so that Medicare could be billed for unnecessary or unperformed services.  Without Medicare beneficiary information, Cherish would not have been able to fraudulently bill Medicare and the

scheme would have been fruitless. However, with Defendant's participation, Medicare paid Cherish $680,922.78 that it would not have paid but for Defendant's involvement. The Court does not see how a minor participant reduction is appropriate as to this Defendant based on his conduct. Defendant's Motion for Downward Departure is denied to the extent that Defendant seeks a 4-level minimal participant reduction.

Next, Defendant states that he should receive a 2-level reduction from his total offense level because he did not use "sophisticated means." For the reasons set forth above regarding Objection #11 to the PSR, the Court finds that the sophisticated means enhancement is proper. Defendant's Motion for Downward Departure is denied to the extent that Defendant objects to the sophisticated means enhancement.

Finally, Defendant argues that the Court should only hold him accountable for an amount of loss attributable to his conduct while he was employed by Dr. Ruben Benito. However, for the reasons set forth regarding Defendant's Objection #8 to the PSR, the amount of loss as calculated in the PSR is proper. Defendant is responsible for patient referrals to Cherish using the names of Dr. Dwight Smith and Dr. Ruben Benito. Defendant admitted that he referred patients to Cherish using Dr. Dwight Smith's name. Tausif Rahman testified at Defendant's trial that when he was introduced to Defendant by Dr. Smith, he was informed that Defendant was seeing patients on behalf of Dr. Smith. (Doc. #156 at 31). Allison Knuckles testified that she first met Defendant at Dr. Smith's office. Alison Knuckles testified that Defendant visited her home multiple times, and that he prescribed her home health care. Accordingly, Defendant is responsible for all patient referrals made to Cherish under the names Dr. Smith and Dr. Benito. Defendant's Motion for Downward Departure is DENIED.

## CONCLUSION

Based on the foregoing, Defendant's objections to the PSR that were not resolved by the parties are OVERRULED, and Defendant's Motion for Downward Departure (Doc. #165) is DENIED.

**IT IS SO ORDERED.**

                                            S/Sean F. Cox
                                            Sean F. Cox
                                            United States District Judge

Dated: July 22, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 22, 2015, by electronic and/or ordinary mail.

                                            S/Jennifer McCoy
                                            Case Manager